**In re John J. KELLY, Debtor.**

**Bankruptcy No. 86–20304.**

United States Bankruptcy Court, D. Montana.

Jan. 19, 1989.

H.A. Bolinger, Bozeman, Mont., for debtor.

Dunlap & Caughlan, Butte, Mont., trustee.

Thomas R. Anacker, Bozeman, Mont., for First Citizens Bank.

James A. Poore, III, Butte, Mont., for Jacobs.

ORDER

JOHN L. PETERSON, Bankruptcy Judge.

In this Chapter 7 case, on November 8, 1988, the Court entered an Order denying the motion of the Trustee to sell the estate's 50% interest in a corporation called Old West Company. The other 50% interest is owned by Ken Jacobs. On December 9, 1988, the creditor Ken Jacobs filed a Motion to Amend an Informal Claim and File a Formal Claim. Hearing on the motion, together with objections filed by First Citizens Bank of Bozeman and the Debtor, was held on December 30, 1988, and the parties submitted memorandums and oral argument in support of their respective positions.

The Order of November 8, 1988, recites in part:

"On October 22, 1984, Jacobs, as shareholder, and Old West sued Kelly, seeking a money judgment and an imposition of a constructive trust or an equitable lien against Kelly's interest for alleged misappropriation of corporate funds. Kelly filed a like counter-claim against Jacobs. In addition, Kelly, Jacobs, Old West and others were named as party defendants in a separate action brought by Patricia Beardsley, which action, by order of this Court of July 7, 1986, was settled, thereby extinguishing 69% of the claims against Kelly's bankruptcy estate in payment of $410,000.00 to Beardsley by Kel-

ly's insurance carrier. After conversion of this case from Chapter 11 to Chapter 7, a new § 341 meeting of creditors was held on October 15, 1986, which notice set a bar date for filing claims for January 13, 1987. Old West and Jacobs failed to file a formal Proof of Claim against the estate based on his claim in the state court litigation. On April 5, 1988, an Order of Discharge was entered in this case."

The Order then held that Jacobs' continuation of the state court action was enjoined by the Order of Discharge, and Jacobs may not participate in any distribution of estate assets since he failed to timely file a Proof of Claim. Upon Jacobs' Motion to Reconsider such Order, I held on November 18, 1988:

"The present motion raises an issue dealing with the right of Jacobs to file a formal Proof of Claim on the basis that documents filed in the present case constitute an informal claim. *See, In re Chicoine,* 97 B.R. 30, 6 Mont.B.R. 183 (Bankr.Mont.1988). The Order of November 8, 1988, intentionally omitted any reference to and thereby refrained from deciding any matter regarding a proposed amendment to an informal claim."

The present Motion to Amend the Proof of Claim squarely presents the issue to the Court. The Trustee has no objection to the present motion of Jacobs.

In *Chicoine,* supra, discussing amendment of an informal Proof of Claim, and relying upon *In the Matter of Pizza of Hawaii,* 761 F.2d 1374 (9th Cir.1985); *In re Sambo's Restaurants, Inc.,* 754 F.2d 811 (9th Cir.1985); and *In re Mitchell,* 82 B.R. 583 (Bankr.W.D.Okl.1988), I concluded that for documents present in a bankruptcy file to constitute an informal Proof of Claim, they must state an explicit demand showing the nature and amount of the claims against the estate, and evidence an intent to hold the estate liable. *Id.* 97 B.R. at 32, 6 Mont.B.R. at 184. In the case *sub judice,* the creditor Jacobs relies upon a

copy of the state court complaint, which was appended as an exhibit to the Debtor's Schedules and Statement of Affairs and Debtor's Motion for Appointment of a Trustee, filed June 12, 1986, while the case was under Chapter 11 of the Code. In the schedules, Jacobs is listed as creditor in the sum of $120,000.00, in an unliquidated and disputed amount. When the case was converted to Chapter 7, the Amended Schedules again listed Jacobs under Schedule A–3, for $120,000.00, by reason of the state court action. The Debtor at all times during the Chapter 11 case vigorously disputed the merits of the Jacobs' claim, and in fact, asserted a counterclaim against Jacobs, which has now been abandoned by the Trustee as having no value.

Jacobs' formal Proof of Claim filed with the motion of December 9, 1988, set forth two claims, both dated December 7, 1988, signed by Jacobs' counsel rather than Jacobs, asserting in claim one a sum due of not less than $197,550.01, and in claim two a sum of $4,000,000.00. The first claim is based on alleged unlawful conversion of assets by Kelly from Old West, and the second claim is based on Debtor's alleged negligent, fraudulent and intentional conduct which damaged the going concern value of Old West, causing a loss of equity and future income. As to this latter claim, a serious issue could be raised that Jacobs is seeking to introduce a new claim in disguise.[1] *See, Sambo's,* supra, at 817; *In re Owens,* 67 B.R. 418, 423 (Bankr.E.D.Pa. 1986). By reason of the ruling in this case, I do not decide that issue.

This case, on its facts, most closely resembles the *Sambo's Restaurant* case, supra. In *Sambo's,* the creditor filed a federal court action post-petition, which was ultimately dismissed as being in violation of the automatic stay. After correspondence between Debtor's chapter 11 counsel and the creditor's attorney, the parties filed a joint motion to transfer the case to Bankruptcy Court. The Ninth Circuit held:

> because the original claims did not give fair notice of the conduct, transaction or occurrence that forms the basis of the claim asserted in the amendment."

---

1. *In re Westgate California Corporation,* 621 F.2d 983, 984 (9th Cir.1980), holds:

"They [amended Proofs of Claim] cannot relate back to the date of the original Proofs

"Wheeler's [creditor] complaint sets forth the nature and amount of the claim, and her joint motion with Sambo's to transfer the claim to bankruptcy court evidences her intent to hold the estate liable.

\*     \*     \*     \*     \*     \*

In the absence of prejudice to an opposing party, the bankruptcy courts, as courts of equity, should freely allow amendments to proofs of claim that relate back to the filing date of the informal claim when the purpose is to cure a defect in the claim as filed or to describe the claim with greater particularity. *See, e.g., Waits v. Weller*, 653 F.2d 1288, 1290 (9th Cir.1981). Wheeler is not seeking to introduce a new claim in disguise, and Sambo's has pointed out no actual prejudice that would result from allowing the amendment."

The Court in *Sambo's* also held that Bankruptcy Rule 5005(b) "gives the Bankruptcy Court discretion to decide, whether, in the interest of justice, an amendable informal claim should relate back". Rule 5005(b) in pertinent part states:

"In the interest of justice, the Court may order that the paper shall be deemed filed as of the date of its original delivery."

The facts here show that the creditor Jacobs did in fact file the state court action against Kelly pre-petition seeking, as to the nature of the claim—

"Monetary damages in an amount to be determined to offset any loses that the Old West Company or Kenneth R. Jacobs have suffered or may suffer as a result of the activities of John J. Kelly."

The complaint and prayer in the state case seek in Count II damages of $120,000.00, but damages are unspecified in Count I. This matter may not be critical to an unliquidated claim under the holding of *Matter of Pizza of Hawaii*, supra, which held:

"Although the complaint thus describes the nature of Shakey's claim, it does not quantify the damages requested—the merit of Shakey's claim—except for the $58,235.00 in dealer fees. Yet, because the violations were ongoing and proof of injury would require extensive evidentiary presentation, Shakey's simply could not be more specific in its request for damages."

In the present case, Jacobs has quantified one claim, and evidently leaves the tort and fraud claim for further determination.

The two matters which arguably makes this case different factually from the *Sambo's* and *Pizza* cases is that Jacobs personally filed no documents in the bankruptcy proceeding, either while it was in Chapter 11 or in Chapter 7, and any counterclaim against Jacobs' claims have been abandoned by the Trustee, thus placing the Debtor in position to contest the claims. The state court complaint and counterclaim were filed in the bankruptcy proceeding by the Debtor as part of the Schedules and Motion for Appointment of Trustee in the Chapter 11 case, while no documents have been filed by any party in the converted case. Under Bankruptcy Rule 3003, in a Chapter 11 case, the schedule of a claim is prima facie evidence of its validity and amount, except if the claim is disputed, in which event the creditor must file a Proof of Claim. In Chapter 7, Rule 3002 requires the filing of a Proof of Claim in every instance. I hold the failure of Jacobs to file pertinent documents is not fatal for it would be an idle gesture for Jacobs to duplicate the Debtor's filing. The evidence also shows Jacobs was involved in the Chapter 11 bankruptcy case when the settlement of the Beardsley case, described in Jacobs' complaint, was before the Court. I further find it is implicit in the state court action to hold Kelly liable, and Kelly's actions in the bankruptcy case obviously treats Jacobs' complaint as a confession to hold the estate liable. *See, Chicoine,* supra, 97 B.R. at 33, 6 Mont.B.R. at 187. All matters considered, I find the documents filed in the bankruptcy action in the nature of the state court action by Jacobs against Kelly to be an amendable informal Proof of Claim, which may be contested by the Trustee, the Debtor or any party in interest, but since no documents were filed in the Chapter 7 case

after conversion, the claim should not relate back to the original Chapter 11 filing.

Moreover, First Citizens Bank has sufficiently raised the issue that the claim should not relate back, but should be treated as a tardy claim for distribution under § 726(a)(3). While the Bank's objections do not speak directly of Rule 5005(b), the argument of the Bank clearly raises the issue of prejudice to timely filed claims. The Bank correctly states that Jacobs received timely notice of the bar date in the Chapter 7 case, and did nothing after conversion to protect his interests by filing a formal Proof of Claim, or any document in the Chapter 7 case. For example, § 348(d) of the Code, dealing with the effect of conversion from Chapter 11 to Chapter 7, allows that claims arising post-petition, but before conversion, are proper claims against the estate. Certainly, if Jacobs' claims are valid, damages were continuing to accrue after the Chapter 11 case was filed. The record is silent as to why Jacobs failed to assert any claim after conversion to Chapter 7. Prejudice to the other unsecured creditors in allowing the claim to relate back is obvious, for three reasons. First, the size of Jacobs' claims, if sustained, would substantially erode and reduce payments of the other secured claims. The Claims Register shows unsecured claims filed of $291,487.00. If Jacobs' unliquidated claims of $4,197,550.00 are allowed on par with the other unsecured debt, all which were timely filed as formal Proofs of Claim, the percentage distribution to Jacobs would be 93% of the amount available to unsecured creditors. Second, the estate ownership of 50% in Old West is the only principal asset of the estate. The bargaining power to Jacobs' based on his claim against the value of such asset, will give rise to a potential credit bid, which may seriously affect the Trustee's ability to liquidate the estate at fair market value for the benefit of the other creditors. Finally, and for a third reason, Jacobs' attempt to establish a formal Proof of Claim comes late in this case, and only after the Court ruled in its Order of November 3, 1988, that Jacobs' state court litigation against Kelly was barred by the Order of Dis-

charge, as was the claim itself. Only after that ruling has Jacobs now tried to assert a large, unliquidated claim, from an action pending since 1984. The lack of diligence on the part of Jacobs is apparent, particularly in light of the bar date in the Chapter 7 case of January 13, 1987. In other words, almost two years of administration of the Chapter 7 case passed, before Jacobs decided he was to look to the bankruptcy estate for payment. The lack of diligence is unexplained. All other unsecured creditors timely and promptly filed claims against the estate after conversion, and their interests should not be diluted because of Jacobs' lack of action. Further, from the Order of November 3, 1988, there may be a surplus available after payment of the timely filed unsecured claims, absent consideration of Jacobs' claim. Accordingly, I find in my discretion that equity demands under these facts that Jacobs' formal Proof of Claim cannot relate back to any document since conversion to Chapter 7, and thus should be treated for purposes of distribution as an unsecured claim filed under § 726(a)(3) of the Code.

IT IS ORDERED the Proofs of Claim of Ken Jacobs are allowed as formal Proofs of Claim to share in dividends of the estate under § 726(a)(3) of the Bankruptcy Code.

